UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-4914 MJD/JJG

| | | |
|---|---|---|
| **GARY LEE BAKER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| Defendant. | ) | |
| | ) | |

JEANNE J. GRAHAM, United States Magistrate Judge.

Plaintiff Gary Lee Baker seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied his application for social security disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The parties have submitted cross motions for summary judgment. For the reasons set forth below, this Court recommends that the Commissioner's decision be affirmed and the case be dismissed with prejudice.

## I.    INTRODUCTION

Gary Lee Baker was born on October 24, 1959. (R. at 87). Mr. Baker protectively filed an application for disability insurance benefits on November 21, 2002. (R. at 86). He alleged he was disabled due to chronic pain, fatigue, and difficulties with concentration (R. at 22), with

1

an onset date of December 1, 1995.    (R. at 87).   The Social Security Administration denied the application initially and on reconsideration.   Mr. Baker timely filed a request for a hearing, which was held before an Administrative Law Judge ("ALJ") on June 14, 2004.

The ALJ issued an unfavorable decision on September 22, 2004.   (R. at 18).   In her decision, the ALJ employed the five-step sequential analysis required under 20 C.F.R. §§ 404.1574 and 416.920.   During the five-step analytical process, the ALJ considers whether (1) the claimant is gainfully employed, (2) the claimant has a severe impairment, (3) the claimant's impairment meets or equals the level of severity described in the Listing of Impairments, (4) the impairment prevents the claimant from performing past relevant work, and (5) the impairment necessarily prevents the claimant from doing any other work.   Ramirez v. Barnhart, 292 F.3d 576, 580 (8th Cir. 2002).

In step one of the analysis, the ALJ found Mr. Baker's various employments during the relevant time met the criteria for unsuccessful work attempts under 20 C.F.R. §§ 404.1574 and 416.974, and therefore Mr. Baker has not engaged in substantial gainful activity since the alleged date of onset.   (R. at 22).   Next, the ALJ found Mr. Baker to be severely impaired by lumbar spondylolisthesis,[1] degenerative disk disease with chronic back pain, left shoulder capsulitis, status post brain tumor surgery with a history of seizures, headaches, hepititis c, depression, alcohol dependency, and possible borderline intellectual functioning.   (Id.).   The ALJ also found Mr. Baker has mild limitations in activities of daily living and moderate

---

[1] Spondylolisthesis is the slipping forward of one vertebra upon another which may be asymptomatic or may present with back pain and leg pain.

2

limitations in social functioning, concentration, persistence, or pace.  (R. at 23).  In step three, the ALJ then determined that Mr. Baker does not have an impairment or combination of impairments that meets or equals the relevant criteria of any listed impairment in the Listing of Impairments contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Id.).

In step four of the sequential analysis, the ALJ concluded that while Mr. Baker retains the Residual Functional Capacity ("RFC") to perform a light level of work, which is simple and unskilled, involving occasional contact with others and performed in an alcohol-free environment (R. at 23-24), Mr. Baker is unable to perform his past relevant work.  (R. at 26-27).  Finally, the ALJ determined Mr. Baker can perform a significant number of jobs in the national economy when considering his vocational factors and residual functioning capacity.  (R. at 27).  The ALJ, therefore, determined that Mr. Baker is not disabled.  (R. at 21).

Mr. Baker appealed the ALJ's decision and submitted additional non-medical evidence to the Appeals Council.  (R. at 14, 17, 442-444).  The Appeals Council denied his request for review on November 8, 2004.  (R. at 10).  The decision of the ALJ therefore became the final decision of the Commissioner.  (Id.).

## II.     DISCUSSION

Mr. Baker raises two challenges to the Commissioner's decision: (1) the ALJ erred by not evaluating his subjective complaints properly pursuant to the requirements of Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), and (2) the ALJ did not consider whether Mr. Baker's impairments in combination were disabling.

### A.     Standard of Review

Judicial review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g), Jones v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003). In determining whether evidence is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support a conclusion." Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). If the Commissioner's decision is based on substantial evidence in the record, the Court may not reverse it merely because other substantial evidence would have supported a different outcome. Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)).

**B.      The ALJ's Evaluation of Mr. Baker's Subjective Complaints**

Mr. Baker first contends the ALJ incorrectly assessed his subjective complaints by failing to follow the evaluation criteria set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). In determining a claimant's RFC at step four of the sequential analysis, an ALJ must evaluate the credibility of the testimony regarding claimant's subjective complaints of pain. Ramirez v. Barnhart, 292 F.3d 576, 580 (8th Cir. 2002). In Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), the Eight Circuit approved a standard for credibility evaluations of a claimant's pain and subjective complaints. The absence of supporting medical evidence is one factor to consider in evaluating credibility. (Id. at 1322.) The ALJ must also consider the claimant's prior work record; daily activities; duration, frequency and intensity of pain; dosage,

effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.  (Id.).

At the outset of the ALJ's analysis of the fourth step of the analytical process, the ALJ specifically indicated her obligation to evaluate the medical records and consider the subjective complaints of Mr. Baker according to the regulatory provisions and Polaski v. Heckler.  (R. at 23).   The ALJ then noted her review of the entire record and her accordance to the claimant "benefit of all doubt in imposing exertional and nonexertional limitations in the workplace." (R. at 23-24).

### 1.    Prior Work Record

In her decision, the ALJ specifically mentioned Mr. Baker's prior history of sporadic work and history of incarcerations.  (R. at 25).   The ALJ credited Mr. Baker for seeking vocational assessments, but noted that he is still seeking disability benefits and has suspended further pursuit of job placement pending the outcome of the hearing before the ALJ.   (Id.). This Court finds that the ALJ properly considered this factor in evaluating the credibility of Mr. Baker.

### 2.    Daily Activities

As to Mr. Baker's daily activities, the ALJ described several inconsistencies between Mr. Baker's claim that he is incapable of performing any gainful activity and other evidence in the record.   The ALJ noted specifically that "testimony and statements in the file indicate that the claimant remained fairly active throughout the day caring for himself and his household, driving, fixing things around the house, searching for work and reading, watching

television, and socializing with others." (R. at 25). There is ample evidence in the record to substantiate the ALJ's determination.

For example, Mr. Baker testified that he spends the day resting and doing exercises, that he reads a little and watches a little television, but does not play cards, and that he does not help his girlfriend with the housework. (R. at 40). However, Mr. Baker underwent a consultative psychological evaluation in January 2003 in which he indicated that he is able to prepare food, use the stove, oven and microwave, able to groom himself adequately and do chores such as dishes and general cleaning. (R. at 338). In March of 2003, during a residual functional capacity evaluation, Mr. Baker indicated that he is able to perform cooking and light household chores, read and watch tv, drive, shop and play some cards. (R. at 383). Mr. Baker also testified at the hearing that he has gone to the store and does a little grocery shopping for himself. (R. at 41).

The ALJ specifically mentioned discrepancies in Mr. Baker's hearing testimony. The ALJ found Mr. Baker's credibility to be reduced by the fact that Mr. Baker initially testified that he could stand for only ten minutes, but later modifying this to forty minutes. (R. at 25). Accordingly, the ALJ did not err in considering the evidence of Mr. Baker's daily activities. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (affirming ALJ's decision to discount credibility where claimant could do some housework, cook, and shop).

### 3.    Duration, Frequency and Intensity of Pain

The ALJ also considered the duration, frequency and intensity of Mr. Baker's pain. Mr. Baker alleges incapacitating levels of pain and claims disability for mental impairments as

6

well.   The ALJ, however, found significant evidence in the record of long periods of time during which the claimant did not seek professional treatment for pain.   (R. at 24).   Counsel for Mr. Baker provides a lengthy, albeit disordered, listing of date ranges during which Mr. Baker received various medical treatments for his various impairments.   However, a thorough examination of all of the medical records reveals substantial evidence that Mr. Baker did not seek medical treatment of any regularity for his pain.

According to the medical records, between September 29, 2000 and November 27, 2001, Mr. Baker sought repeated treatment for his Hepatitis C and sought regular refills for his seizure prevention medication.   (R. at 231-314,321-325, 356-380, 425-430).   However, during the same time period, a period of over one year, there is no evidence in the medical records that Mr. Baker sought treatment for shoulder pain, back pain or leg pain.[2]   (Id.).   Only four visits to a medical facility are found in the record for the entire 2002 calendar year.   (R. at 424-302).   Two of these visits identify seizure prescription refills as the reason for the visit (R. at 243-245), and one indicates a "racing mind [and] mood swings" as Mr. Baker's complaint (R. at 302).   Only one entry identifies pain as the reason for Mr. Baker's treatment.   (R. at 321-324).   Moreover, Mr. Baker testified that he was not currently receiving any medication for the treatment of his mental impairments.   (R. at 40).   During a psychiatric consultation in January, 2003, Mr. Baker indicated he was not receiving any mental health treatment.   (R. at

---

[2]Medical Records from the Dakota Clinic indicate Mr. Baker was diagnosed with a hernia for which he underwent surgery on April 26, 2001.  However, the examination records surrounding Mr. Baker's hernia treatment do not reflect reports by Mr. Baker of shoulder, back or leg pain or treatments for any such pain.

337).

The absence of treatment is a regulatory element of credibility.    See 20 C.F.R. 404.1529(c)(3)(v).    The Eight Circuit recently noted that "the ALJ concluded, and we agree, that if [the claimant's] pain was as severe as she alleges, [claimant] would have sought regular medical treatment."    Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003).    It is within the province of the ALJ to discount the claimant's claim of disability in view of a failure to seek ameliorative treatment.    (See Id.).

The Court recognizes that the record contains evidence of Mr. Baker's medical treatment for many of the impairments alleged here.    However, there is substantial evidence, both cited by the ALJ and in the record itself, negating the alleged severity of Mr. Baker's pain. Accordingly, the ALJ did not error in discounting the duration, frequency and intensity of Mr. Baker's pain.    The Court further points out that the ALJ did in fact find Mr. Baker to possess a limited RFC and accommodated such limitations with limitations on Mr. Baker's ability to use his arms to work.    (R. at 28).    However, the ALJ did not find credible Mr. Baker's claim that he was incapable of all work activity.    The ALJ correctly considered the duration, frequency and intensity of Mr. Baker's pain.

### 4.    Dosage, Effectiveness and Side Effects of Medication

The Court now turns to the dosage, effectiveness and side effects of Mr. Baker's medication.    Mr. Baker reported taking Vicodin, Flexeril and muscle relaxers.    (R. at 37).    Mr. Baker testified that he does not take any anti-psychotic or antidepressant medication.    (R. at 40).    The ALJ noted Mr. Baker's use of medication in her decision stating that "the claimant

reported little relief in symptoms of pain with treatment including medication." (R. at 25).   The
ALJ then stated that the record reveals that   "the claimant has not requested any medication
changes from his physician" and therefore inferred the claimant was satisfied with the effects
of the present medication."[3] (Id.).

The record contains evidence that in late 2002 and early 2003, Mr. Baker was taking
Tylenol for his pain without sufficient relief.   (R. at 322 and 344).   The record also reflects
a request by Mr. Baker for stronger pain medication in early 2003. (R. at 343-344).   According
to the medical records, Mr. Baker was provided a thirty day supply of Vicodin for use at night.
(R. at 344).   Following the February 2003 request for stronger pain medication, however, there
is no further evidence of additional requests for medication changes, although Mr. Baker
subsequently underwent a course of treatment involving injections, which appear to have been
successful in relieving a good deal of Mr. Baker's arm and leg pain (R. at 425).   In fact, the
record indicates an 80% relief level in Mr. Baker's back and leg pain following an injection
on 11/21/03.  (Id.).

Mr. Baker's documented medication treatments, limited requests for alternative
medications to alleviate the severe pain alleged, and the evidence of effective pain relief
though a course of injections in late 2003 and 2004 collectively amount to substantial
evidence in the record to support the ALJ's consideration of dosage, effectiveness and side

_____

[3] The ALJ made this inference based upon Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th
Cir. 1995) in which the Eight Circuit held that an ALJ may reasonably infer the claimant is satisfied with
the effects of present medication when the claimant does not take any steps to obtain different
medication.

effects of medication.    In addition, the ALJ expressly indicated that she considered the potential side effects of the medication as alleged by the claimant and restricted Mr. Baker's performance abilities to "performance of simple unskilled work." (R. at 25).    In sum, the ALJ properly considered the dosage, effectiveness and side effects of Mr. Baker's medication.

###    5.    Other Factors

There is no specific mention in the decision of the ALJ of her consideration of precipitating and aggravating factors.    However, an ALJ need not discuss methodically each Polaski factor as long as the factors are acknowledged and examined.    See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).    The court will defer to an ALJ's good judgement even if every Polaski factor is not discussed in depth as long as the ALJ gives good reasons for discrediting the claimant. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001).

While the ALJ's did not expressly discuss all of the Polaski factors in her decision, she thoroughly reported on her analysis of the record and her reasons for discrediting Mr. Baker's subjective complaints of pain.    Moreover, the ALJ included in her Polaski analysis her observations that the objective medical evidence and the claimant's course of treatment are not consistent with the severity of Mr. Baker's allegations.    (R. at 24).    The ALJ notes the record's confirmation of a history of chronic back pain, grade 1 spondyloisthesis, an annular tear at the L4-5 and posterior disc area, and mild degenerative changes in the cervical spine with moderately severe narrowing at the C5-6 level.    (Id.).    The ALJ also notes, however, that the treatment records consistently documented good muscle strength and range of motion, no ongoing neurological or sensory deficits, and no difficulties with ambulation.    (Id.).

The finding of inconsistencies by the ALJ are well supported by the record. Medical records from September 2000, November, 2001, and August 2002, all indicate normal strength in Mr. Baker's lower extremities. (R. 243, 246, 266). Medical records from August, 2002 specifically state that Mr. Baker "states he is doing quite well. He denies any headaches, vision changes, numbness or tingling in any extremity." (R. at 243). There is substantial evidence in the record to support the ALJ's finding inconsistences in the supporting medical evidence and the severity of Mr. Baker's allegations. There is more than adequate detail in the decision of the ALJ regarding her reasons for the level of discrediting of Mr. Baker's subjective complaints.

### 6.    Conclusion

"Subjective complaints may be discounted if there are inconsistencies in the record as whole." Polaski, 739 F.2d at 1322. Questions of credibility are for the trier of fact, and the reviewing court should defer to the ALJ's credibility determinations if the decision expressly discounts a claimant's evidence and gives good reason to do so. Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). The Court has reviewed the ALJ's assessment of Mr. Baker's subjective complaints of pain and finds the ALJ's decision to be especially thorough and well-supported. The Court notes that the ALJ did not completely discount Mr. Baker's complaints of pain; she accepted that he experiences pain and discomfort and suffers a certain level of mental impairment. The ALJ simply discounted the severity of Mr. Baker's complaints in accordance with Polaski. The Commissioner is entitled to summary judgement on this issue.

**C.     The ALJ's Consideration of Mr. Baker's Physical and Mental Impairments in Combination**

Mr. Baker' second challenge asserts that the ALJ failed to obtain adequate expert medical opinions to evaluate his physical and mental impairments in combination.   Mr. Baker argues that Social Security Ruling 96-6P ("SSR 96-6p") required the ALJ to obtain the opinion of an additional medical expert regarding his combination of impairments and medical equivalency.[4]   Mr. Baker contends that the ALJ's failure to seek this additional medical opinion resulted in a record that was not fully and fairly developed and her decision to deny benefits was not supported by substantial evidence.

In support of his argument, Mr. Baker quotes at length portions of SSR 96-6p. This Court need only address two portions of this ruling here.   First, according to SSR 96-6p,

> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled.   As a trier of facts, the administrative law judge or Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments.   However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

> Signature of a state agency medical or psychological consultant on an SSA-831-U5 (disability determination transmittal form) ... ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of

---

[4]Under 20 C.F.R. § 402.35(b)(1), Social Security Rulings ... are binding on all components of the Social Security Administration.   These Rulings represent precedent final opinions and statements of policy and adopted interpretations.   Social Security Rulings are published at http://www.ssa.gov/OP_Home/rulings/rulfind1.html.   The text of SSR 96-6p is published at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-06-di-o1.html.

medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including psychiatric review technique forms and various other documents on which medical and psychological consultants may record their findings may also ensure that this opinion has been obtained at the first two levels of administrative review.

Contrary to Mr. Baker's assertions, the above quoted paragraphs of SSR 96-6p do not require the ALJ to provide a new medical evaluation for a claimant whenever the state medical or psychological consultant has addressed the issues of equivalency.   See Jones v. Barnhart, 315 F.3d 974 (8th Cir. 2003).   "Instead, the ruling requires the ALJ to accept the findings made by a physician 'designated by the Commissioner' as expert evidence."   (Id.) (quoting 20 C.F.R. 404.1526(c) (providing that a state medical consultant is considered a physician designated by the Commissioner.)).   Furthermore, the requirement to receive expert opinion evidence into the record on the issue of equivalence may be satisfied by various types of documents signed by a State Agency medical or psychological consultant."   (Id.) (quoting SSR 96-6p).

The record in this matter contains two SSA-831 forms, both signed by State Agency medical specialists.  (R. at 56 and 59).   The ALJ has thus satisfied the requirements of SSR 96-6p by receiving into evidence the opinion of State Agency medical and psychological consultants addressing the issues of whether Mr. Baker's impairments were equivalent to any listed impairment.  Moreover, the ALJ makes reference to numerous documents in the record containing medical and psychiatric review techniques forms and notes of medical and psychological consultants reflecting their findings regarding Mr. Baker's impairments and medical equivalency.  (R. at 23).

Finally, there is no merit to Mr. Baker's contention that SSR 96-6p required the ALJ

13

to order an additional medical opinion under the provision providing for the provision of an updated medical opinion in certain circumstances.  SSR 96-6p provides that after the State Agency reviewer has signed off on the Disability Determination Transmittal Form SSA-831, there are two instances when the ALJ "must obtain an updated medical opinion from an expert." SSR 96-6p continues

> When no additional medical evidence is received, but in the opinion of the administrative law judge or appeals council, the symptoms, signs and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

> When additional medical evidence is received that in the opinion of the administrative law judge or the appeals council, may change the state agency medical or psychological consultant's findings that the impairment(s) is not equivalent in severity to any impairment in the listing of impairments.

There is no indication of additional medical evidence added to the record subsequent to the completion of the second SAA-831 in May 2003.  (R. at 9 and 59, ).  The decision of the ALJ clearly demonstrates her considered conclusion that Mr. Baker's impairment, or combination of impairments, do not meet or equal the severity of a listed impairment (R. at 23).  This Court finds no indication in the ALJ's decision suggesting that a finding of equivalence would be reasonable.  This Court finds no error in the ALJ's assessment of Mr. Baker's combined physical and mental impairments.

## III.    CONCLUSION

Based on the foregoing, and all of the files records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

(1)    Mr. Baker's motion for summary judgment (Doc. No. 13) should be **DENIED**;

and

(2)     The Commissioner's motion for summary judgment (Doc. No. 16) should be

**GRANTED**.

DATED: October 24, 2005                    s/Jeanne J. Graham

_____
                                          JEANNE J. GRAHAM
                                          United States Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by November 14, 2005.   A party may respond to the objections within ten days after service thereof.   Any objections or responses filed under this rule shall not exceed 3,500 words.   A District Judge shall make a de novo determination of those portions to which objection is made.   Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals of the Eight Circuit.